## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

United States Courts
Southern District of Texas
F I L E D

| | |
|---|---|
| DAVE SPENCER and<br>FAYE SPENCER<br>    *Plaintiffs,*<br><br>    vs.<br>GREGORY WAYNE ABBOTT, in his<br>official capacity as Governor of<br>TEXAS,<br>WARREN KENNETH PAXTON, in<br>his official capacity as Attorney<br>General of TEXAS,<br>ROBERT "BOB" WILSON, in his<br>individual capacity,<br>HOUSTON SPCA, as an agent of the<br>state,<br>JENNIFER CARTWRIGHT, in her<br>individual capacity,<br>AMY BLACKWELDER, in her official<br>and individual capacities,<br>RONALD CHIN, in his official and<br>individual capacities,<br>EDIE CONNELLY, in her official and<br>individual capacities,<br>CLAUDIA LAIRD, in her official and<br>individual capacities,<br>AARON JOHNSON, in his official<br>and individual capacities, and<br>JOSEPH GUIDRY, in his official and<br>individual capacities, and<br>MONTGOMERY COUNTY, TEXAS,<br><br>    *Defendants,* | Case No.:<br># 20-3550<br>OCT 16 2020<br>David J. Bradley, Clerk of Court<br><br>**PLAINTIFFS ORIGINAL<br>COMPLAINT OF<br>UNCONSTITUTIONAL STATUTE**<br><br>**EXHIBITS 1-15 attached hereto<br>and incorporated herein** |

## PLAINTIFFS' ORIGINAL COMPLAINT OF UNCONSTITUTIONAL STATUTE

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW,** Plaintiffs Dave Spencer and Faye Spencer, in *propia persona* in the above-titled cause, hereby file this, their Original Complaint of Unconstitutional Statute.

### INTRODUCTION & OPENING STATEMEMT

1.   This lawsuit challenges a longstanding and sweeping Texas law, Texas Health and Safety Code § 821, "THSC § 821", Treatment and Disposition of Animals. THSC § 821 has been written, implemented, and then ratified by the state courts as a stand-alone "civil forfeiture" statute involving "civil animal cruelty" vs. Texas Penal Code 42.09 "Cruelty to Livestock Animals" and 42.092 "Cruelty to Non-livestock Animals". In summary, THSC §821 is void on its face, substantially overbroad, constitutionally vague and can never be applied constitutionally. This statute is unconstitutional at all times and under all circumstances.

2.   The language of THSC § 821 has been ratified by the upper state and federal courts as a civil cause of action, a civil forfeiture hearing, in which the State is Plaintiff and the animal owner is Defendant without use of valid civil process, in a cause of action ratified as "civil animal cruelty". Subsequent to the issuance and return of the "civil seizure warrant" which the state courts have ruled are not required to hold constitutional muster, the civil forfeiture trial is held within 10 days in a Justice Court or Municipal Court. Within a

brief period of time, minutes to several hours, the animal owner, absent rules of court, the right to jury, some instances of outright denial of right to counsel, and many other impermissible denials of fundamental rights *inter alia*, the animal owner can be divested of ownership of her lawfully owned property and taxed costs and fees in the hundreds of thousands of dollars. Numerous cases in this state have demonstrated that these low courts have ruled that $1,450,000.00 of pedigree animals can be forfeited in behalf of the state in the Justice Courts, taxed costs and fees in excess of $200,000.00, and set appeal bonds at over $200,000.00.

3.     Since 1989, THSC § 821 making use of its overbroad language, functions in direct conflict with the 4th, 6th, 8th, and 14th Amendments to the U.S. Constitution, implicating the double jeopardy clause of the 5th Amendment, and creates a chilling of the 1st Amendment right of the people within the state of Texas.

4.     Through THSC § 821, thousands of Texans have already suffered irreparable harm as a result of execution of this unconstitutional statute and Plaintiffs Dave Spencer and Faye Spencer are just two of such citizens who have so suffered.

5.     Plaintiffs seek a declaratory judgment that THSC § 821 violates their constitutional and statutory rights to substantive and procedural due process

of law, to be free from unreasonable searches and seizures, and violates their rights to privacy, property, and liberty.

6.      Finally, because Plaintiffs have already suffered injury under THSC § 821 relating to the violations of the foregoing Constitutional Amendments, they pray that the court order additional relief as permitted by law.

## JURISDICTION AND VENUE

7. This action arises under 42 U.S.C. § 1983 to redress the deprivation of rights under color of state.

8. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under laws of the United States and the United States Constitution.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2) because Defendant Montgomery County resides within the District, and all Defendants reside within the State of Texas; and because a substantial part of the events that gave rise to the Plaintiffs' claims took place within the District.

10. This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure, and 28 U.S.C. §§ 2201 and 2202.

11. This Court has personal jurisdiction over Defendants because they are domiciled in Texas.

## PARTIES

### A. Plaintiffs.

12. Plaintiff Dave SPENCER, hereinafter "Dave", at all times relevant herein, was domiciled in the State of Texas.

13.   Plaintiff Faye SPENCER, hereinafter "Faye", at all times relevant herein, was domiciled in the State of Texas.

**B. Defendants.**

14.   Defendant GREGORY WAYNE ABBOT ("Defendant Abbot" or "Governor Abbot" or "the Governor") is sued in his official capacity as the Governor of Texas. Pursuant to Article 4 Sec. 1 of the State Constitution, "the Governor is the Chief Executive Officer of the State" which at present is vested in Defendant Abbot in his capacity as Governor.  Article 4 Sec. 10 states that, further, "he shall cause the laws to be faithfully executed".  Governor Abbot is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times relevant to this complaint.

15.   Defendant WARREN KENNETH PAXTON ("Defendant Paxton" or "Mr. Paxton") is sued in his official capacity as the Attorney General of Texas. Pursuant to Article 4 Sec. 402.010 it is Defendant Paxton's duty in his capacity as Attorney General of Texas to appear on behalf of the state in any court or tribunal in any cause or matter, civil or criminal, in which the state may be a party or interested. It is also the duty of Defendant Paxton to defend and enforce the laws of Texas. Mr. Paxton is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times relevant to this complaint.

16.    Plaintiffs are informed and believe that Defendant, ROBERT "BOB" WILSON, hereinafter "WILSON", was an employee of HSPCA at the time of his involvement and was acting as an agent of the state.   WILSON is being sued in his individual capacity and as an agent of the state.

17.    Plaintiffs are informed and believe that Defendant, HOUSTON SPCA, through this complaint and hereafter "HSPCA", is a privately held corporation in the State of Texas, and at all times relevant to this complaint, was acting as an agent of the state in behalf of MONTGOMERY COUNTY, TEXAS.

18.    Plaintiffs are informed and believe that JENNIFER CARTWRIGHT, hereinafter "CARTWRIGHT", acted as an agent and informant for MONTGOMERY COUNTY through its agent HSPCA.

19.    Plaintiffs are informed and believe that Defendant, AMY BLACKWELDER, hereinafter "BLACKWELDER", is a sworn Deputy Sheriff for Montgomery County in the State of Texas, and at all times relevant to this complaint, was acting as an employed, compensated, enriched and rewarded employee for COUNTY.   BLACKWELDER is being sued in her individual and official capacities.

20.    Plaintiff is informed and believes that Defendant, RONALD CHIN, hereinafter "CHIN", is an assistant County Attorney for Montgomery County in the State of Texas, and at all times relevant to this complaint, was acting

as an employed, compensated, enriched and rewarded employee for COUNTY. CHIN is being sued in his individual and official capacities.

21.   Plaintiff is informed and believes that Defendant, EDIE CONNELLY, hereinafter "CONNELLY", was an elected Justice of the Peace for Precinct 3 of Montgomery County in the State of Texas, and at all times relevant to this complaint, was acting as an employed, compensated, enriched and rewarded employee for COUNTY.   CONNELLY is being sued in her individual and official capacities.

22.   Plaintiff is informed and believes that Defendant, CLAUDIA LAIRD, hereinafter "LAIRD", is an elected Judge for the County Court at Law #2 of Montgomery County in the State of Texas, and at all times relevant to this complaint, was acting as an employed, compensated, enriched and rewarded employee for COUNTY.   LAIRD is being sued in her individual and official capacities.

23.   Plaintiffs are informed and believe that Defendant, JOSEPH GUIDRY, hereinafter "GUIDRY", is the Director of the Montgomery County Animal Control for Montgomery County in the State of Texas, and at all times relevant to this complaint, was acting as an employed, compensated, enriched and rewarded employee for COUNTY. GUIDRY is being sued in his individual and official capacities.

24. Plaintiffs are informed and believe that Defendant, AARON JOHNSON, hereinafter "JOHNSON", is the Shelter Director of the Montgomery County Animal Shelter for Montgomery County in the State of Texas, and at all times relevant to this complaint, was acting as an employed, compensated, enriched and rewarded employee for COUNTY.  JOHNSON is being sued in his individual and official capacities.

25. Defendant MONTGOMERY COUNTY, TEXAS, hereinafter "COUNTY" is a governmental body existing under the laws of the State of Texas and within the United States Southern District of Texas and is responsible for all aspects of implementing and enforcing Texas Health and Safety Code §821 within its jurisdiction.

26. Defendants, through their respective duties and obligations, are responsible for enforcing Texas Health and Safety Code § 821. Each Defendant, and those subject to their direction, supervision, and control, has or intentionally will perform, participate in, aide and/or abet in some manner the acts alleged in this complaint, has or will proximately cause the harm alleged herein, and has or will continue to injure Plaintiffs irreparably if not enjoined. Accordingly, the relief requested herein is sought against each Defendant, as well as all persons under their supervision, direction, or control, including but not limited to their officers, employees, and agents.

## GENERAL FACTUAL ALLEGATIONS

### C. CONSTRUCTION OF STATUTES AND CODES ARE INTENDED TO COMPLY WITH THE CONSTITUTIONS AND A JUST AND REASONABLE RESULT IS INTENDED

27.  Per the Texas Government Code (see Exhibit 6 p. #3), in enacting a

statute it is presumed that:

(1) compliance with the constitutions of this state and the United States
    is intended;
(2) the entire statute is intended to be effective;
(3) a just and reasonable result is intended;
(4) a result feasible of execution is intended; and
(5) public interest is favored over any private interest.

28.  THSC § 821 makes use of a variety of newly created legal constructs

that are facially and functionally contrary to law *inter alia* specific to the

defining and ratifying of civil animal cruelty as a cause of action in violation of

the 14th Amendment, civil seizure warrants whose issuance and execution fails

to comply and comport to long standing statutes relating to the 4th

Amendment, process and hearings absent compliance with rules of civil

procedure in violation of the 14th Amendment, findings against an owner for

civil cruelty where he is thereby divested of unrestrained dollar amounts of

property in violation of the 4th and 14th Amendments, and can be taxed costs,

fees, some in benefit to private organizations, and required to post appeal

bonds in such elevated amounts that the average citizen would be precluded

from posting.

**D. THSC § 821 provides for an unconstitutional warrant to be issued and executed in violation of the 4ᵗʰ Amendment to the U.S. Constitution**

29.     The County and District Attorneys hold that the warrant to seize the animals under THSC § 821 is not required to comply with the 4ᵗʰ Amendment of the U.S. Constitution as it is a "civil seizure warrant" and that the purpose of issuance is not to seek evidence of any crime, but only to seize animals that have been allegedly civilly cruelly treated.  Additionally, said warrant is not required to comply with the particularity standards of this same Amendment. (See Exhibit 14 – TDCAA - To Seize or Not to Seize" p. 2 ¶3 and 5 AND Exhibit 15 p. 2 - line 13).

30.     Texas Code of Criminal Procedure 18.01(b) holds exclusive controlling influence and guidance of all seizure warrants issued in the state of Texas (see Exhibit 6 p. 3 Judicial Notice #4. :

> "No search warrant shall issue for any purpose in this state unless sufficient facts are first presented to satisfy the issuing magistrate that probable cause does in fact exist for its issuance. A sworn affidavit setting forth substantial facts establishing probable cause shall be filed in every instance in which a search warrant is requested.

31.     It is well established that probable cause exists when there is a fair probability that a search will result in evidence of a crime being discovered and the sufficiency requirement of probable cause has long been established as the demonstration of sufficient facts detailing likelihood that a crime has been

committed. In the case of a warrant search, however, an affidavit or recorded testimony must support the warrant by indicating on "what basis" probable cause of "what crime" exists. THSC § 821.021(a-b) does not adhere to this standard.

32.    Additionally, we see that TCCP 18.10 details guidelines for the return of an executed warrant (see Exhibit 6 p. 3 Judicial Notice #6 ) including *inter alia* that it be returned within 3 days of execution, the seized property remain in the county from whence it was seized, and that copy of the inventory taken into custody be given to the magistrate.  Such detailed guidelines for any of the preceding, at minimum, regarding the civil seizure warrant return are not prescribed in THSC § 821 nor is any reference for adherence made.

33.    In addition, as THSC § 821 deals with animals, this statute provides no guidelines for the safe and humane seizure of the animals, or requiring the cataloguing the unique physical appearance, condition, or value of each animal, especially when multiple animals are seized, nor is there any requirement for providing an inventory list, as is required in Texas Criminal Code of Procedure 18.10.

34.    The animals are evidence for the THSC § 821 civil forfeiture hearing, and for any further prosecution of the owners in a subsequent criminal case under Texas Penal Code 42.09 "Cruelty to Livestock Animals" and 42.092 "Cruelty to Non-livestock Animals", however best practices for the

preservation and gathering of the evidence are not followed.  The location of impoundment or care is not required to be provided to the animal owner.  In the event that animals are injured or killed or destroyed during the impoundment period, there is no requirement for accountability.

### E. THSC § 821 does not comply with the requisites of the Texas Government Code 27.031  but expressly violating the 4th Amendment rights of animal owners

35.    Article V Section 19 of the TEXAS CONSTITUTION creates Justice of the Peace Courts and Texas Government Code Chapter 27.031 clarifies the limited jurisdiction of Justice Courts specific to forfeitures of property. Per TGC 27.031(b)(1) –

> "Justice courts cannot hear a suit in behalf of the state to recover a penalty, *forfeiture*, or escheat."

36.  The THSC § 821 hearings have resulted and will result in forfeitures, triggering due process protections violations for owners. These forfeitures are an unreasonable deprivation of property, thereby violating the animal owner's rights under the 4th Amendment to the U.S. Constitution and the Texas Constitution.

### F. THSC § 821 does not conform to the forfeiture guidelines as detailed under Texas Chapter 59 – Forfeiture of Contraband

37.    In the state of Texas regarding the civil forfeiture of property, it is covered extensively in Texas Code of Criminal Procedure Chapter 59 – Forfeiture of Contraband.  In part it this chapter details that the civil process

be issued with the State of Texas versus the property in question, that proceedings be held in the designated District Court, that the specific civil rules of procedure apply and discovery be allowed, at minimum. The finding of the court relates to the assessment of the property as being contraband or not and the disposition ordered therefrom.

38.    The aforementioned is significantly more encompassing than what is prescribed in THSC § 821 as has been so ratified by the state courts. THSC § 821.022(b) prescribes the holding of:

> "...a hearing in the appropriate justice court or municipal court to determine whether the animal has been cruelly treated."

In overbroad language as to which court is to make a finding that the animal owner has cruelly treated the subject animal, the state courts have ratified that to mean the designated Justice or Municipal court specific to THSC § 821.022(b).

39.    Additionally, the state courts have ratified that this same court and in this same proceeding under THSC § 821.023(d), is to also make a finding as to whether the owner is guilty of cruelly treating the subject animals.  In an affirmative finding of guilt, this court shall then divest the owner of ownership, order disposal of the animals by auctioning, donating to a designated organization or entity, or destroying the same and tax costs and fees against the owner.

### G. THSC § 821 creates the environment for violation of the Double Jeopardy clause of the 5th Amendment to the U.S. Constitution.

40.     THSC § 821 does not prevent subsequent or concurrent criminal prosecution for animal cruelty under Texas Penal Code 42.092 or 42.09a– despite whether the evidence has been destroyed nor does the criminal cause of action allow discovery or examination of the "civil seizure warrant" which seized the animals. The criminal action does not allow discovery or admission of all the evidence regarding cruelty to the animals that was gathered in this "civil animal cruelty" hearing as it is a "closed matter".

41.     The justice court hearing in which owners are found to have cruelly treated their animals creates a presumption of guilt that cannot be overcome in the criminal trial. Simply put if you are guilty of civil cruelty you are guilty of criminal animal cruelty.

### H. The THSC § 821 ruling has a limited appeal availability, and appeal bonds are not restrained from being excessive

42.     Under THSC § 821.023(e-1), specific to the subject court setting the appeal bond, after their cats had been taken out of the county to the Houston SPCA facility for 6 days, the court ruled that the appeal bond for Plaintiffs Dave Spencer and Faye Spencer be set at $104,274.90.

43.     In numerous instances where multiple animals are involved, the court asks the beneficiary organization, an animal welfare organization, what the expected costs are and an estimated invoice is presented to the court. The

court uses this estimate is the cost for the appeal bond and can implicate the violations of the 8th Amendment.

44.    THSC § 821 has been so lucrative for animal welfare organizations around the state to participate in multiple animal seizures, organization such as the HSPCA employ their own group of "investigators" who travel the local counties in seemingly officially marked vehicles and dressed in uniforms similar to those of law enforcement, who seek out situations and instances by where they can make complaints of civil animal cruelty, participate with the local officials in the seizure, impound and board the animals, and receive ownership transfer of the animals by the court. These organizations further use these situations to solicit donations which they receive in the hundreds of thousands of dollars to care for these civilly cruelly treated animals.

## I. Plaintiffs Factual Allegations

45.    Dave Spencer, "Dave", a 78-year-old senior citizen, has engaged in the development of Dave and Faye's Cat Sanctuary located in Spring, Texas for over 12 years. Dave and Faye together personally owned 231 cats.

46.    Faye Spencer, "Faye", his now 61-year-old wife has worked together with Dave in this non-profit venture.

47.    Since their beginning in 2008, with the knowledge and support of their local Home Owners Association, Plaintiffs have spent over $200,000 of their personal funds developing their property for this custom enclosed cat

sanctuary and habitat, maintaining this sanctuary, and providing a "forever home" for unwanted, injured, and special needs cats.  Since 2008, Plaintiffs have been accepting cats on a regular basis from the Montgomery County Animal Shelter/Animal Control due to overcrowding and from other persons and organization.

48.   Dave and Faye take possession and ownership of the unwanted cats and take full responsibility for their daily care including any needed veterinary care.

49.   Additionally, Plaintiffs have provided temporary sanctuary for cats of owners who are unable to care for their cats at no cost to the owners.  When the owners are available to care for the cats once again, they return to the Plaintiffs' cat sanctuary and retrieve their animal at no cost.  This no cost standard has been maintained even if the cats had to be spayed or neutered or receive any other veterinary care.

50.   As of October 10, 2018, Plaintiffs housed and cared for approximately 231 sanctuary cats in the private sanctuary habitat located on their property. Plaintiffs regularly maintain over 1550 pounds of dry cat feed in 14 lb. bags, 250 cans at 5.5 ounce each of wet cat food, special cat medicines, and special automatic cat feeders and watering devices.  Dave and Faye have spent beyond full-time as operators of the sanctuary and caring for the cats in this enclosed sanctuary.

51.     Currently, Dave and Faye provide for the care and housing of 51 cats that have been brought to their sanctuary by Operation Pets Alive, former employees of Montgomery County Animal Shelter, and other organizations.

## J. THSC § 821 Implementation against Dave and Faye Spencer

52.     Prior to 1/19/18, Dave and Faye have not ever received notice of any complaint regarding their cat sanctuary. Defendant CARTWRIGHT moved in next door to the sanctuary on or about December 28, 2017, a person who had previously given cats to Plaintiffs for care.  CARTWRIGHT, after moving into the next-door home, was observed by Dave on numerous occasions atop a ladder by the high fence separating the properties taking photos of their backyard. Dave also observed CARTWRIGHT tear down the part of the double barrier fence separating their properties, and peer through the one most interior on Dave and Faye's property and take photographs of Plaintiffs backyard.  Several of these photos were used by CHIN in the hearing of October 24, 2018.

53.     After January 20, 2018, Dave and Faye had been contacted by their local Homeowners Association, as well as the Montgomery County Health Department, the Texas Commission on Environmental Quality, Montgomery County Animal Control, Adult Protective Services, and the Montgomery County Sheriff's Department because of complaints made by CARTWRIGHT. After reviewing the complaints in light of any visit or contact with Plaintiffs,

officials from these agencies closed their files as no action was required (see Exhibit 12).

54.    On 1/19/18 at approximately 1:30 p.m., Dave observed a dark colored SUV with what appeared to be official markings on the side park in the front of their home.  A man wearing law enforcement styled dark blue clothing with a printed badge on his shirt and metal badge on his waist band walked down the driveway and into the garage towards Dave.  This man identified himself as Bob Wilson (WILSON), an Investigator for HSPCA.

55.    WILSON stated that he was there to investigate a complaint. WILSON told Dave that he was required by law to inspect the cat sanctuary. After WILSON completed his inspection he directed Dave to follow him to the SUV.  WILSON filled out a form in which Dave was directed to take 4 specific cats to a veterinarian.  WILSON told Dave to sign the form otherwise Dave would be breaking the law.  Subsequently, Dave signed this form (see Exhibit 12) and later with the order to take the 4 specific cats to a veterinarian.

56.    On or about 4/18/18, WILSON, again, appeared at Plaintiffs' residence and cat sanctuary.  WILSON stated that he was there to investigate another of CARTWRIGHT's complaints of animal cruelty and "hoarding". Dave refused entry to WILSON.  WILSON stated that he would arrest Dave if he did not grant WILSON entry to conduct his investigation.  Under this threat of arrest, Dave granted WILSON entry into the house and cat

sanctuary to conduct his investigation. At the completion of his investigation, WILSON commanded Dave to sign an agreement to obtain vet care for several of the cats. Dave stated that he did not want to sign the agreement. WILSON stated that he would arrest Dave if he failed to sign the paper. Dave, under this threat, signed the paper.

57. On or about 9/24/18, CARTWRIGHT made a complaint to Adult Protective Services (APS) claiming *inter alia* that Dave and Faye were hoarding animals and Dave was not properly caring for Faye (see Exhibit 13). CARTWRIGHT reported that she had been in contact with GUIDRY and JOHNSON, who were familiar with Plaintiffs and their sanctuary. Per CARTWRIGHT's statement, see Exhibit 13, p.5 ¶1, "Aaron and his staff he told me that it would take 200k dollars to [*sic]* take, all of the animals because they would have to open a second facility to house them till it makes it through the court system."

58. APS, after acting on CARTWRIGHT's complaint by conducting interviews, conducting an onsite investigation and interviews with Plaintiffs, and reviewing all other relevant information, prepared their findings. APS reported that Faye was in no danger and the residence, sanctuary, and property were clean, therefore, they closed the case on 9/25/18.

59. On or about October 10, 2018, Defendant WILSON again appeared at Plaintiffs' residence and cat sanctuary. WILSON entered into the garage

with 4 other individuals. WILSON, wearing a dark blue shirt with a printed badge and a badge on his waist band and tactical dark blue pants approached Dave. Dave questioned WILSON as to "What do you want?". WILSON stated to Dave that he was there to investigate another complaint by CARTWRIGHT regarding animal cruelty and then walked directly past Dave. Dave stated to WILSON that he did not want them there and to leave. The group then followed WILSON into the residence. WILSON directed Dave to wait outside while he and his group conducted this investigation or he would arrest him. Dave complied.

60.     These individuals included GUIDRY, HSPCA employee Adam Reynolds, Dr. Jordan Gentry DVM (Doctor of Veterinary Medicine) for the Montgomery County Animal Shelter (formally with HSPCA), and Tracy Allen, employee of the Montgomery County Animal Control.

61.     Shortly after WILSON began his alleged unofficial investigation, Faye who was in the house, observed BLACKWELDER appear on the property and walk through their garage and into their residence and cat sanctuary (see Exhibit 1). BLACKWELDER was observed talking to WILSON and the other individuals.

62.     At the completion of this approximately 2+ hour unofficial investigation during which this group was checking cats and walking throughout the property at will, WILSON prepared another HSPCA paper and

commanded Dave to issue his signature.  Dave stated that he would not sign this paper and told these individuals including BLACKWELDER and WILSON to get off of his property and stop harassing the cats.  WILSON stated that he would arrest Dave if he did not sign the HSPCA paper and comply with HSPCA's recommendations. Dave signed the paper "under protest" (see Exhibit 2). WILSON directed Dave and Faye to have approximately 25 cats which were collared by this group to be treated by a licensed veterinarian.  WILSON demanded that Dave and Faye do so within 3 days and to have a "colony check" or he would arrest Dave. Dave asked what a colony check was and WILSON failed to answer.  The group then left Dave's and Faye's property.

63.    Dave complied with the HSPCA paper and took the 25 cats to a veterinarian, paying $2600 for the vet services.  The veterinarian reported that he did not know what a "colony check" signified.  In addition, Dave, per the order of WILSON, forwarded a copy of the vet report to WILSON at HSPCA on or about October 16, 2018.

64.    On or about October 17, 2018, WILSON returned to Plaintiffs' residence and cat sanctuary and handed Dave a search warrant (see Exhibit 3). WILSON stated to Dave that he and the group of approximately 20 which included GUIDRY, JOHNSON, BLACKWAELDER, and other individuals were there to seize all of the cats. CARTWRIGHT and members of the HOA

were standing on the property by the driveway observing.  Dave was told to remain outside or WILSON would arrest him for obstruction.  Dave stated to WILSON that he had complied with the HSPCA recommendations, so what was the reason for seizing the cats?

65.    WILSON was observed directing and coordinating the activities of the seizure group.  Dave and Faye observed the seizure group using huge nets and other items to capture the cats in the yard and house.  Plaintiffs' observed numerous cats being injured as they were struck with the nets and thrust into cages as these individuals destroyed the cat's homes and tracked mud and dirt inside the home of Dave and Faye.  After several hours of chaos, in which they caused $8,000.00 worth of damage to Plaintiffs' house and sanctuary, this group had seized all but 6 cats and then left the premises.  Dave was handed a Notice of Hearing in Justice Court Precinct 3 scheduled for October 24, 2018, some 7 days later.

66.    Dave and Faye an inventory of what property was seized was provided to Plaintiffs' on or about 1/17/2019, 3 months after the seizure and only after the filing of the original complaint. BLACKWELDER failed to file the statutorily required certified schedule of the property seized relating to this warrant as required by Texas Code of Criminal Procedure 18.15.

67.    On or about October 24, 2018, within 7 days of the issuance of the civil seizure warrant, the Texas Health and Safety Code §821.022(b) hearing

was held in Montgomery County Justice Court Precinct 3. CONNELLY presided and CHIN prosecuted this case in behalf of the State arguing that Plaintiffs had cruelly treated all of the animals. Despite having counsel present to assist Plaintiffs at this hearing, CONNELLY denied this assistance (see Exhibit 4).

68.    At the completion of this 5-hour hearing, the Justice of the Peace, CONNELLY, ruled that Plaintiffs' had cruelly treated all of the "approximately 200 cats" and divested them of ownership. In addition, CONNELLY taxed court costs and fees in the amount of $52,137.45 (see Exhibit 5) which HSPCA is attempting to collect from Plaintiffs (See Exhibit 7). CONNELLY further ruled that if Plaintiffs' wanted to appeal her order they would have to post an appeal bond in the amount of $104,274.90.

69.    On or about 11/26/2018, following this proceeding, Plaintiffs submitted a judicial notice (see Exhibit 6). Plaintiffs demonstrated the defects in the jurisdiction of the CONNELLY's court as a matter of law and that she had exceeded the jurisdiction provided by Texas Health and Safety Code § 821. Further, they demonstrated through this notice that her order was void on its face as a matter of law.

70.    Plaintiffs believing that they were required to post such a bond in order to save the lives of the 231 cats, some of which they have cared for over

11 years, instead filed a *forma pauper*.  The $104,274.90 appeal bond was beyond their ability to pay.

71.    After Plaintiffs filed a Judicial Notice in this court (See Exhibit 6), CONNELLY granted Plaintiffs appeal on November 27, 2018.  Plaintiffs were notified that a Bench trial would be scheduled in Montgomery County - County Court at Law 2, LAIRD presiding.  Plaintiffs requested 45 days to prepare for a trial as provided for by Local Rules of County Courts at Law Montgomery County Rule 2.1 (e) (1).  Plaintiffs were notified via email that this bench trial would commence on 12/4/2018, only the 4th day after Plaintiffs were notified that there would be a trial.

72.    Plaintiffs submitted notice to the LAIRD court on or about 12/3/20018 regarding the lack of jurisdiction of this court to hold a trial (see Exhibit 8) as it conflicted with the Texas Health and Safety Code § 821.  They later submitted notice to this court that they would not attend this bogus proceeding for cause (see Exhibit 9).

73.    On or about 12/4/2018, Plaintiffs, having at no time received any valid civil process regarding any litigation specific to COUNTY's alleged matter with Dave and Faye listed as parties, Dave and Faye chose not to attend this proceeding.   LAIRD issued an order lacking the statutory requisites for a Judgment, finding that Dave and Faye had cruelly treated all of the 231 cats and ordered them to pay $100,010.00 (see Exhibit 10)

74.     Dave and Faye, to date, have not been formally criminally charged or convicted of animal cruelty under Texas Penal Code 42.092, and have not received any civil process demonstrating that they are litigants in any civil matter specific to these circumstances.

## CLAIMS FOR RELIEF

### COUNT I
### Deprivation of Rights relating to the 4th Amendment

75.     Plaintiffs incorporate paragraphs 1 through 74 as though fully set forth herein. Plaintiffs state this cause of action against Defendants in their official capacities for purposes of seeking declaratory and injunctive relief, and challenge THSC § 821 both facially and as applied to them. The 4th Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that

> "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated and that no Warrant shall not issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, the person or things to be seized".

### A.   Right to be Free from Unreasonable Searches and Seizures U.S. Const. Amend. 4

76.     Plaintiffs incorporate paragraphs 1 through 75 as though fully set forth herein.

77.   Plaintiffs state this cause of action against certain Defendants in their official capacities for purposes of seeking declaratory and injunctive relief and challenge to THSC § 821 both facially and as applied to them.

78.   Plaintiffs state this cause of action against certain Defendants in their official capacities for purposes of seeking declaratory and injunctive relief and challenge to THSC § 821 both facially and as applied to them.

79.   Plaintiffs state this cause of action against all Defendants other than Abbot and Paxton, in their individual and official capacities for specifically acting in deprivation of Plaintiffs' 4th Amendment rights and damages caused specifically therefrom.

**B.  Right to be free from unreasonable searches and seizures relating to the procedures for the issuance, execution, and return of search warrants that fail to comply with Texas Code of Criminal Procedure Chapter 18 – Search Warrants (THSC § 821.022(a) and (b))**

80.   Section A of Count 1 is asserted by Plaintiffs Dave and Faye against all Defendants.

81.   Under the Fourth Amendment there is one standard for the issuance of a search warrant and that is it be based on probable cause of a crime. The absence of this standard or any reference or ratification thereto in THSC § 821 violates this secured right of Plaintiffs and all citizens who own any animals.

82.   THSC § 821.022(a) and (b) facially and as ratified for application, therefore, violates the rights of all animal owners in Texas.

83.   Any or all of the Defendants reference to a "lower standard of probable cause" as justification for issuance of a warrant, a "civil seizure warrant" under THSC § 821 breaches the 4th Amendment right of Plaintiffs or other animal owners.

84.   Any or all of the Defendants specific to the execution of a warrant, the "civil seizure warrant" under THSC § 821 breaches the 4th Amendment right of Plaintiffs and other animal owners.

85.   THSC § 821's direction for the issuance and execution of its "civil seizure warrants" serves no legitimate governmental purpose, but only as a means to harass and abuse persons who own animals.

86.   THSC § 821 deprives Plaintiffs and animal owners of their right to privacy, security, and well-being. For example, Plaintiffs and numerous others were restrained under threat of violence and by armed force by officials when these "civil seizure warrants" were executed.  These officials and other persons roamed unfettered in the citizens home, their private areas where money and other valuables are held, and are not supervised or held accountable for any damage or theft.

87.   THSC § 821 presents no particularity requirement for the animals to be seized under the warrant which violates the 4th Amendment of Plaintiffs and other animal owners.

88.   THSC § 821 presents no guidelines for the manner in which the animals are to be seized to ensure that they are not injured, maimed, or killed which violates the 4th Amendment.  For example, in Plaintiffs circumstance, numerous of the cats seized were struck with the nets used by non-official persons employed by HSPCA. Numerous of the cats were observed to be lacerated and several were observed to be unable to stand or walk after they netted and caged. Plaintiffs were informed that numerous of the cats were destroyed by HSPCA before the THSC § 821 hearing absent any court order.

89.   THSC § 821 presents no guidelines for where the seized animals are to be impounded after the seizure, how they will be cared for, who will monitor the care, and how the animals as evidence will be secured.

## COUNT 2
### Right to procedural and substantive due process in the Courts per U.S. Const. Amend. 14

90.   Plaintiffs incorporate paragraphs 1 through 89 as though fully set forth herein.

91.   Plaintiffs state this cause of action against certain Defendants in their official capacities for purposes of seeking declaratory and injunctive relief and challenge to THSC § 821 both facially and as applied to them.

92.   The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 § 1983 provides that "No person shall be deprived of life, liberty, or property without due process of law.".

Plaintiffs' Original Complaint of Unconstitutional Statute                    Page  29

93.   THSC § 821 presents no guidelines or Rules of Procedure for the hearing directed under THSC § 821.022(c) conducted in the Justice or Municipal Court within 10 days after the execution of the search warrant.

94.   Further, THSC § 821 provides no guidelines or references by how the standards for findings are established for said court to make a finding that the owner has civilly cruelly treated the subject animals.

## COUNT 3
### THSC § 821 implicates violation of the
### 5th Amendment Double Jeopardy Clause

95.   Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 94 above and incorporate the same as if set forth in full

96.   THSC § 821 the subject court can and must make a finding as to whether the animal owner has cruelly treated the subject animal.  But this same statute provides no guidelines and points to no reference distinguishing between the prosecution of "civil animal cruelty" and criminal animal cruelty designated under Texas Penal Code 42.09 and 42.092.

97.   As has happened and continues to happen in this state, an animal owner can suffer the punishments under THSC § 821.023 of being divested of ownership of his animals, pay costs and fees without limit, which would be criminal punishments and still be criminally prosecuted, so that they suffer additional punishment including serving jail time and additional fines.

98.    This finding in the "civil animal cruelty" matter does not preclude or prevent a criminal prosecution for the same set of circumstances and thereby puts the animal owner of having his 5th Amendment rights violated as to:

"...nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb..."

99.    This scenario has played out numerous times since the legislature passed THSC § 821 and the state of Texas has maintained that it is acceptable to divest an animal owner of even $100,000.00's of lawfully owned property in the civil forfeiture proceeding and then criminally prosecute them as further punishment.

100.    Plaintiffs claim that THSC § 821 by its use implicates and violates the rights of citizens relating to the Double Jeopardy Clause of the 5th Amendment.

## COUNT 4
## (42 U.S.C. § 1983; Unreasonable Search and Seizure – 4th Amendment)

101.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 48 above and incorporate the same as if set forth in full.

102.    Defendants GENTRY, JOHNSON, and other COUNTY employees knew or should have known that they had no lawful authority to enter onto Plaintiffs' property on October 10, 2018 without exigent circumstances of emergency, permission from the Plaintiffs', and law enforcement present in

execution of a warrant.  These Defendants came onto Plaintiffs' property and conducted an unlawful and unreasonable search.

103.  In so doing, Defendants GENTRY, JOHNSON, and COUNTY violated Plaintiffs' rights relating to the 4th Amendment and did so with deliberate indifference.

104.  As a direct and proximate consequence of the acts of these Defendants, PLAINTIFFs have suffered and continue to suffer injury therefrom and are entitled to recover damages accordingly.

## CAUSE IV

## (42 U.S.C. § 1983; Unreasonable Search and Seizure – 4th Amendment)

105.  Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 51 above and incorporate the same as if set forth in full.

106.  Defendant BLACKWELDER knew or should have known that her prepared application for the search and seizure warrant on its face demonstrates that she obtained alleged probable cause after her illegal entry onto Plaintiffs' property on October 10, 2018.  Any reasonable officers would know or should have known that probable cause must exist independently from an unauthorized entry onto private property.

107.  In so doing, Defendant BLACKWELDER violated Plaintiffs' rights relating to the 4th Amendment and did so with deliberate indifference.

108. As a direct and proximate consequence of the acts of this Defendant, Plaintiffs have suffered and continue to suffer injury therefrom and are entitled to recover damages accordingly.

## CAUSE V
## (42 U.S.C. § 1983; Unreasonable Search and Seizure – 4th Amendment)

109. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 108 above and incorporate the same as if set forth in full.

110. Defendant BLACKWELDER knew or should have known that all prepared applications for a search and seizure warrant must comply with TEXAS CRIMINAL CODE OF PROCEDURE 18.01(b) :

> "No search warrant shall issue for any purpose in this state unless sufficient facts are first presented to satisfy the issuing magistrate that probable cause does in fact exist for its issuance. A sworn affidavit setting forth substantial facts establishing probable cause shall be filed in every instance in which a search warrant is requested.

And 18.04:  CONTENTS OF A WARRANT

A search warrant issued under this chapter shall be sufficient if it contains the following requisites:

> (1)  that it run in the name of "The State of Texas";
> (2)  that it identify, as near as may be, that which is to be seized and name or describe, as near as may be, the person, place, or thing to be searched;
> (3)  that it command any peace officer of the proper county to search forthwith the person, place, or thing named;
> (4)  that it be dated and signed by the magistrate; and

(5) that the magistrate's name appear in clearly legible handwriting or in typewritten form with the magistrate's signature.

111. BLACKWELDER knew or should have known that the application demonstrated no act of cruelty to any animal and the warrant itself was insufficient. Any reasonable officers' review of this warrant would conclude that the warrant was facially defective, that it lacked particularity, and that it was overbroad. BLACKWELDER did so act arbitrarily and did seize all of these cats in furtherance of a conspiracy.

112. In so doing, Defendant BLACKWELDER violated Plaintiffs' rights relating to the 4th Amendment and did so with deliberate indifference.

113. As a direct and proximate consequence of the acts of this Defendant, PLAINTIFFs have suffered and continue to suffer injury therefrom and are entitled to recover damages accordingly.

## COUNT 4
### (42 U.S.C. § 1983; Unreasonable Search and Seizure – 4th Amendment)

114. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 60 above and incorporate the same as if set forth in full.

115. All Defendants participated in and ratified the unreasonable search and seizure of the cats at Plaintiffs' property and did and do so as a custom, practice, or policy.

116. All defendants therefore interfered with Dave's AND Faye's constitutionally prescribed reasonable search and seizure protections guaranteed by the 4th amendment.

117. In so acting, all Defendants violated Plaintiffs rights guaranteed and protected by the 4th Amendment. These Defendants so acted arbitrarily and with deliberate indifference to Plaintiffs' constitutionally protected right and is the proximate cause of the injury they suffered therefrom.

118. As a direct and proximate consequence of the acts of this Defendant, Plaintiffs' have suffered and continue to suffer injury therefrom and are entitled to recover damages accordingly.

## COUNT 5
### (42 U.S.C. § 1983; Unreasonable Search and Seizure - 4th Amendment)

119. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 119 above and incorporate the same as if set forth in full.

120. CONNELLY knew or should have known that the application for warrant prepared by BLACKWELDER demonstrated that she unlawfully entered onto Plaintiffs' property in order to generate her probable cause statement. Any reasonable magistrate knew or would have known that application on its face and as presented would be insufficient to grant a search warrant.

121.  In so acting, CONNELLY violated Plaintiffs rights guaranteed and protected by the 4th Amendment by signing a warrant with no probable cause. CONNELLY acted arbitrarily and with deliberate indifference to Plaintiffs' right to be free from unreasonable searches and seizure and is the proximate cause of this injury.

122.  As a direct and proximate consequence of the acts of this Defendant, Plaintiffs' have suffered and continue to suffer injury therefrom and are entitled to recover damages accordingly.

## COUNT 6
### (42 U.S.C. § 1983; Unreasonable Search and Seizure – 4th Amendment)

123.  Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 69 above and incorporate the same as if set forth in full.

124.  CONNELLY knew or should have known that the deficiencies of the application and warrant prevented the Justice Court from acquiring jurisdiction to hold a hearing under Texas Health and Safety Code § 821.022(b) in which she could determine if the animal in question had been cruelly treated.

125.  In so acting, CONNELLY violated Plaintiffs rights guaranteed and protected by the 4th Amendment by holding a hearing when no valid warrant or other lawful process existed granting the court jurisdiction.  CONNELLY acted arbitrarily and with deliberate indifference to Plaintiffs' constitutionally

prescribed reasonable search and seizure protections and is the proximate cause of this injury.

126.   As a direct and proximate consequence of the acts of this Defendant, Plaintiffs' have suffered and continue to suffer injury therefrom and are entitled to recover damages accordingly.

**COUNT 7**
**(42 U.S.C. § 1983; Due Process– 14th Amendment)**

127.   Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 126 above and incorporate the same as if set forth in full.

128.   CONNELLY knew or should have known that Texas Health and Safety Code §821 creates no cause of action, civil or criminal through which Dave or Faye could be validly classified as defendants.  CONNELLY exceeded the limits of the prescribed THSC § 821.022(b) in which she could determine whether the subject animal had been cruelly treated and made a criminal finding reserved for a court of competent jurisdiction regarding Dave and Faye.

129.   In so doing, Plaintiffs rights relating to the 14th Amendment have been violated and CONNELLY has done so with deliberate indifference.

130.   As a direct and proximate consequence of the acts of this Defendant, Plaintiffs' have suffered and continue to suffer injury therefrom and are entitled to recover damages accordingly.

## COUNT 8
## (42 U.S.C. § 1983; Excessive Bonds and Fines – 8th Amendment)

131.  Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 77 above and incorporate the same as if set forth in full.

132.  CONNELLY absent jurisdiction divested Plaintiffs' and others of ownership of their cats, disposed of the same, and taxed court costs and fees against Plaintiffs amounting to $52,137.45 which Houston SPCA is now attempting to collect.   Additionally, CONNELLY ordered that should Plaintiffs' choose to appeal her order they would be required to post a bond in the amount of $104,274.90,

133.  In so doing, Plaintiffs rights relating to the 8th Amendment have been violated and CONNELLY has done so with deliberate indifference.

134.  As a direct and proximate consequence of the acts of this Defendant, Plaintiffs' have suffered and continue to suffer injury therefrom and are entitled to recover damages accordingly.

## COUNT 9
## 42 U.S.C. § 1983; Due Process– 14th Amendment

135.  Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 81 above and incorporate the same as if set forth in full.

136.  LAIRD knew or should have known that Texas Health and Safety Code §821 creates no cause of action, civil or criminal through which Dave and Faye could be validly classified as defendants.  Further, LAIRD knew or should

have known that being as the Justice Court is not the court of competent jurisdiction to make a finding against Plaintiffs regarding an animal cruelty issue, it had no authority to divest Plaintiffs of their property and impose fines. Therefore, LAIRD had no jurisdiction to hold any trial or appeal relating to the circumstances of this matter.

137. In so doing, LAIRD violated Plaintiffs rights relating to the 14th Amendment and she has done so with deliberate indifference.

138. As a direct and proximate consequence of the acts of this Defendant, Plaintiffs' have suffered and continue to suffer injury therefrom and are entitled to recover damages accordingly

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment:

A. Declaring that THSC § 821 is an unconstitutional statute as its language is substantially overbroad, constitutionally vague, and its implementation results in the violation of rights specific to the 4th, 5th, 8th, and 14th Amendments as detailed, and creates a chilling of the 1st Amendment relating the citizens and other persons of Texas.

B. Declaring that the provisions of and enforcement by Defendants of THSC § 821 as discussed above have resulted in the violation of Plaintiffs'

rights under the right to be free from unreasonable searches and seizures relating to the 4th Amendment to the United States Constitution;

      C.    Declaring that the provisions of and enforcement by Defendants of THSC § 821 as discussed above have resulted in the violation of Plaintiffs' rights to due process relating to the 14th Amendment to the United States Constitution;

      D.    Declaring that the provisions of and enforcement by Defendants of THSC § 821 as discussed above violate Plaintiffs' rights under the right to be free from excessive fines and costs relating to the 8th Amendment to the United States Constitution;

      E.    Preliminarily and permanently enjoining enforcement by Defendants of THSC § 821 as discussed above;

      F.    Grant such other and further relief as appears reasonable and just, to which Plaintiffs show themselves entitled.

      G.    The declaratory relief requested in this action is sought against each Defendant; against each Defendant's officers, employees, and agents; and against all persons acting in active concert or participation with any Defendant, or under any Defendant's supervision, direction, or control.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.**

DATED this ____ day of ___OCT___, 2020.

_____

Dave Spencer
3302 Hickory Hollow Rd.
Spring, Texas 77380
713-819-8999
fspencer@esdline.com
*In Proper Person*

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.**

DATED this __16th__ day of ___October___, 2020.

_____

Faye Spencer
3302 Hickory Hollow Rd.
Spring, Texas 77380
713-819-8999
fspencer@esdline.com
*In Proper Person*